RODRÍGUEZ, PETITIONER AND APPELLANT, v. MILLER, COMMISSIONER OF EDUCATION, RESPONDENT. AND APPELLEE.

APPEAL from the District Court of Mayagüez in Mandamus Proceedings.

No. 1434.—Decided March 14, 1916.

ORGANIC ACT—INSULAR LEGISLATION—CONSTITUTIONAL LAW.—The Organic Act places no restriction upon insular legislation by prohibiting the inclusion of more than one matter or subject in a single act, or requiring that all matters so included shall be mentioned in the title. The said Organic Act did not bring with it to this island either every provision of every State constitution or any provision of any State constitution. Cases involving the powers of State or Territorial legislation in this regard invariably rest entirely upon the constitutional provisions of the particular State or Territory.

ULTRA VIRES — FREE TEXTBOOKS FOR PUPILS OF PUBLIC SCHOOLS — APPROPRIATIONS — LEGISLATIVE ASSEMBLY. — Appropriations Act No. 39 of March 11, 1915, is not *ultra vires* and void in so far as it attempts to regulate the furnishing of textbooks to the pupils of the public schools for the reason that it contains more than one matter or subject or that it does not mention all such matters or subjects in its title, and it is obvious that such legislation is within the powers of the Legislative Assembly.

PUBLIC SCHOOLS—SALE OF TEXTBOOKS TO PUPILS—COMMISSIONER OF EDUCATION—ORGANIC ACT.—Appropriations Act No. 39 of 1915 authorizes the sale of textbooks to the pupils of high and continuation schools, but contains no

suggestion whatever of a direct sale by the Commissioner of Education in person, nor is there anything therein which conflicts with section 22 of the Organic Act. On the contrary, the said Act of 1915 is in full harmony with section 25 of the Organic Act.

CONSTITUTION OF PORTO RICO—ORGANIC ACT—CIVIL CODE.—The Organic Act and not the Civil Code is the constitution of Porto Rico, and the only rational view of section 3 of the Civil Code is that it merely voices in statutory form an ordinary, well-recognized, cardinal principle of statutory construction.

PUBLIC SCHOOLS—RETROACTIVE EFFECT OF LAWS—VESTED RIGHTS.—Act No. 39 of 1915 is neither restrictive in form nor does it take away any vested right, inasmuch as it does not require pupils of high and continuation schools to pay for books formerly used in previous years, but only for those to be used in the future.

ID.—VESTED RIGHTS—HOPE OR EXPECTATION.—It is an elementary principle that a bare hope or expectation based upon an anticipated continuation of the law in its original form can never be regarded as a vested right.

ID.—CONSTRUCTION OF LAW—CODIFIED SCHOOL LAWS—SCHOOL AGE.—Section 2 of the Codified School Laws never intended to make the higher institutions of learning more generally accessible without cost to all applicants for admission than lower grades of the regular common-school system, or to confer upon any and all persons, regardless of age or of mental and moral qualifications or notwithstanding their refusal to comply with the express statutory provision as to the acquisition of the necessary textbooks and supplies, or in the face of obviously possible circumstances and conditions, an absolute unqualified right to immediate enrollment as of course and without room or opportunity for the exercise of any discretion whatever upon the part of the school authorities in any of the "higher institutions of learning."

MANDAMUS—FREE TEXTBOOKS FOR PUPILS OF PUBLIC SCHOOLS—COMMISSIONER OF EDUCATION—MINISTERIAL DUTY.—In so far as it is mandatory Act No. 39 of 1915 absolutely forbids the Commissioner of Education to supply free textbooks and supplies to the pupils of high and continuation schools, and in so far as it is directory or permissive of a possible exception, that is not matter which could form the basis of *mandamus* proceedings in the absence of a plain ministerial duty.

The facts are stated in the opinion.

Mr. *José Sabater* for the appellant.

Messrs. *Howard L. Kern*, Attorney General, and *Earle T. Fiddler* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

This is an appeal from a decision of the District Court of Mayagüez refusing to issue a writ of *mandamus* to compel the Commissioner of Education to supply free textbooks to the son of petitioner and to admit him to the High School of Mayagüez.

The petition alleges in substance that the son of peti-

tioner was eighteen years of age and had completed success-fully his first year in high school; that he had applied to the principal of the Mayagüez High School for enrolment as a student during the year 1915–16 and, at the same time, had demanded free textbooks and supplies, and that the principal of the high school had refused to enroll him as a student in the high school or to furnish him free books and supplies.

A demurrer was filed upon the ground, among others, that the petition did not state facts sufficient to constitute a cause of action for reasons set forth in five specifications, a detailed repetition of which is deemed unnecessary.

This demurrer was sustained by the court below for the reasons stated in a written opinion which appears in the record, but without permission or extension of time for amendment, and the judgment appealed from was thereupon entered at the suggestion of petitioner.

The fundamental question involved seems so simple and free from doubt that we shall dispose of the same at once without needless and cumbersome discussion of the ruling first specified as error or of various other more or less interesting points argued in the briefs submitted. An act entitled "An Act making appropriations for the necessary expenses of carrying on the Government of Porto Rico for the fiscal year ending June 30, 1916, and for other purposes," approved March 11, 1915 (Laws of 1915, p. 81), under the subhead "Office of the Commissioner of Education," contains the following item and provisos:

"*Textbooks and school supplies:* For the purchase of school textbooks, school equipment and school supplies, and for freight and insurance charges on same, $50,000; in all, $50,000.

"*Provided,* That school textbooks and supplies shall be furnished free of charge to the pupils of the public schools up to and including the eighth grade, and the Commissioner of Education may authorize the sale of school textbooks to pupils in accordance with rules and regulations to be made by him; *And provided, further,* That

after July 1, 1915, the pupils of all high and continuation schools shall provide their own textbooks and supplies in accordance with rules and regulations to be made by the Commissioner of Education.''

Petitioner does not deny that the enactment just quoted expressly forbids the furnishing of textbooks and supplies to high-school students free of charge but insists that the law is *ultra vires* and void in so far as it attempts to regulate public-school matters in an appropriation act without mention of such purpose in the title. The theory is, to say the least, somewhat far-fetched and surcharged with *ignis fatuus.*

In support of the broad proposition that ''American jurisprudence condemns and prohibits this kind of legislation'' appellant quotes from Cooley on Constitutional Limitations, from the opinion of the Supreme Court delivered by Mr. Justice Field in *Louisiana* v. *Pilsbury,* 105 U. S. 278, and from 36 Cyc. 1045. The argument concludes as follows:

''It is true that the foregoing jurisprudence is based on constitutional provisions existing in most of the States of the Union, but it is no less true that the enactment of the Foraker Law establishing a Civil Government for Porto Rico implanted in this Island a system of Civil Government founded upon the same sound and democratic principles upon which the governments of the several States and Territories of the Union rest. And if those rules having a moral and salutary object in the States are there applied by the courts of justice in defense of the people, there is no reason to suppose that in this Island they do not have the same application to produce that same moral and salutary effect in our system of government, under the democratic sovereignty of the American people.''

It is quite clear that appellant does not rely upon any specific constitutional provision prohibiting the inclusion of more than one subject or object in a single enactment or requiring that all matters so included shall be mentioned in the title; and it is equally apparent that our Organic Act places no such restriction on Insular legislation. We need not demonstrate the self-evident proposition that the Foraker Act did not bring with it to this Island either every provi-

sion of every state constitution or any provision of any state constitution.

Cases involving the powers of State or Territorial legislatures in this regard invariably rest entirely upon the constitutional provisions of the particular State or Territory. An examination of the authorities cited by appellant *supra* will suffice to sustain this statement. Judge Cooley, when he used the language quoted by appellant, was discussing provisions in State constitutions. *Commonwealth* v. *Barnett*, 199 Pa. St. 161, cited by appellant, traces the history of the constitutional provision in Pennsylvania and in so doing strongly emphasizes the controlling influence of a specific constitutional requirement in striking contrast to conditions outlined and the law applicable thereto as described and said to have obtained prior to the various successive amendments to the State constitution mentioned in the opinion of the court. In the case of *Louisiana* v. *Pilsbury*, 105 U. S. 278, also relied upon by appellant, the Supreme Court rested its decision on the provision contained in the constitution of Louisiana to the effect that "every law enacted by the legislature shall embrace but one subject and that shall be expressed in the title." Incidentally the court said: "But it was not intended to forbid the union of several different provisions in the same bill, if they are germane to the general subject indicated by its title. * * * So here, under the title of the act in question, provisions might be enacted, not merely relating to the union of the different municipalities and the government of the State, but to all the varied details into which the general administration of its affairs might lead."

Were it necessary, the statute in the case at bar might be sustained upon the ground suggested by the language last above quoted, inasmuch as the provisos assailed by appellant can hardly be regarded as entirely foreign to the subject of school appropriations. But the legislation in question is so clearly within the powers of the assembly that we need not dwell upon the view taken by the Supreme Court

in the Pilsbury case, although it is supported by abundant authority.

The gist of appellant's theory is that this court should declare the statute invalid because it is. contrary to an alleged fundamental principle of American jurisprudence. Granting, for the sake of argument, the independent existence of such a general principle in the abstract and without regard to any specific constitutional provision,—yet to do what we are now asked to do in the very teeth of the statute would amount to a most arbitrary, unquestionable and unprecedented attempt at judicial legislation and would carry us as far beyond the province of this court as any conceivable enactment could possibly exceed the powers conferred by law upon the Legislative Assembly. If any court has ever held any statute to be unconstitutional upon general principles of abstract law, because it embraced more than one subject or object, or because the subject or object was not expressed in the title, in the absence of any constitutional provision forbidding that sort of legislation, the reasoning upon which its conclusion was reached would doubtless make interesting reading, but we are not aware of any such decision. See Cooley, Constitutional Limitations (seventh ed.), Ch. VII,—"Of the circumstances under which a legislative enactment may be declared unconstitutional," p. 227 *et seq.*

But appellant also argues that under the Organic Act the Commissioner of Education has neither the power nor the right to collect funds or to constitute himself custodian thereof and therefore that he cannot sell books to students; that section 22 of the Foraker Act expressly determines who shall collect and keep the funds of the Government and that the Legislative Assembly, in section 80 of the Political Code, has followed and adopted this provision; and, further, that no provision whatever is made for the proper disposition by the Commissioner of Education of the proceeds arising from the sale of books.

The language of the law of 1915, *supra,* is that "The Com-

missioner of Education may *authorize* the sale of school text-books to pupils *in accordance with rules and regulations to be made by him."* There is no suggestion whatever of a direct sale by the Commissioner ·of Education in person. There is nothing whatever in the law which necessarily conflicts with section 22 of the Organic Act providing that the Treasurer of Porto Rico shall collect and be the custodian of the public funds and shall disburse the same when appropriated by law on warrants signed by the Auditor and countersigned by the Governor, or with section 80 of the Political Code to the effect that

"The Treasurer shall receive and safely keep all revenues of the Insular Government, from whatever source derived, all moneys belonging to The People of Porto Rico, and all trust funds and special deposits, and shall keep a properly detailed account thereof in permanent books of record, in which all such receipts and deposits shall be entered under appropriate heads, with the names of the agents, officers and persons from whom received and the dates of receipt."

The law of 1915 does not prescribe in detail the manner in which the sale of books is to be authorized by the Commissioner of Education nor does it contain the remotest indication that any illegal or irregular method may be pursued in effecting such sale. On the contrary, it is in full harmony with section 25 of the Organic Act which provides that

"The Commissioner of Education shall superintend public instruction throughout Porto Rico, and all disbursements on account thereof must be approved by him; and he shall perform such other duties as may be prescribed by law * * *."

The question is too frivolous for serious discussion.

Another contention of appellant upon this phase of the case is that the law of .1915 is retroactive and therefore void.

It is urged that a student who has been supplied with books during his first year in the high school has acquired the right to free textbooks and supplies during the whole high-school course and that. the statute therefore is in dero-

gation of a right vested under a former law. Section 3 of the Civil Code relied upon by appellant in this regard provides that "Laws shall not have a retroactive effect unless they expressly so decree," and that "In no case shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislative action." The Organic Act and not the Civil Code is our constitution, and the Legislative Assembly was as free and untramelled in the exercise of its legislative powers in the session of 1915 as it was in 1902 when it adopted the Revised Civil Code. Neither was it the intention of that body when sitting in its second session in 1902, by the enactment of section 3 or of any other section of the Civil Code, to tie the hands of all successive assemblies, nor could it have accomplished such a purpose had it so desired. The only rational view of section 3 of the Civil Code is that it merely voices in statutory form an ordinary, well-recognized, cardinal principle of statutory construction.

But, even if the rule as stated in the Civil Code could be regarded as in any sense a constitutional limitation upon the legislative power, yet the law of 1915 is neither retroactive in form nor does it deprive petitioner or anyone of any vested right. It does not require pupils to pay for books formerly used in previous years but only for those to be used in the future. It would be just as logical to say that a pupil acquired a permanent and inalienable right to free school supplies throughout the public-school course by virtue of his matriculation in the first grade,—or, as for that matter, by birth,—prior to the enactment of the law of 1915, as it is to say that such right was vested by enrolment before 1915 in a high school. In either case there could be nothing more than a bare expectation based upon an anticipated continuance of the law in its original form; and that such mere expectancy can never be regarded as a vested right is a most elementary principle. Cooley on Constitutional Limitations,

511. The absurdity of the proposition is, too palpable for argument.

We do not understand that petitioner insists upon the right to enrolment independently of the alleged right to free supplies, but, as the district court has pointed out that on the face of the petition the applicant for admission is over age, and appellant, in discussing the conclusion drawn from this circumstance by the court below, insists that the statutory age limit applies only to the "common schools" and not to high schools, it seems proper to refer briefly to this point.

Section 2 of the Codified School Laws reads as follows:

"The Commissioner of Education is hereby authorized and directed to establish and maintain a system of free public schools in Porto Rico for the purpose of providing a liberal education to the children of school age, *i. e.*, between the ages of five and eighteen years; to establish higher institutions of learning, including colleges, universities, normal, industrial, mechanical and high schools, together with such other educational agencies as said Commissoner may find necessary and expedient in order to promote the educational development of the Island. In addition to the rural and graded schools which shall constitute the regular common-school system, said commissioner is hereby authorized and directed to establish, maintain and direct so far as the resources placed at his command will permit, such special schools as in his judgment are necessary to meet special educational needs, such as kindergarten schools, night schools, agricultural schools, professional and commercial schools, and schools in penal and charitable institutions, either under private or public management, where the same can be maintained in general harmony with the public-school system and in harmony with its general standards, provided that the pupils in said special schools may include others than those of school age. The Commissioner of Education, the assistant commissioner, the secretary of the department and the general superintendent of schools shall have power to administer oaths and take sworn testimonies on school matters."

A sufficient answer to the suggestion of a distinction in this regard is perhaps contained in the legal maxim *ubi lex non distinguit nec nos distinguere debemus.* Moreover, as

to the "special schools" authorized in the section just quoted, it is expressly "provided that pupils in said special schools may include others than those of school age," while no such exception is made as to "colleges, universities, normal, industrial, mechanical and high schools" enumerated in the preceding sentence and in the same breath with the definition of "school age." Also, were the argument sound, it would eliminate the high school from the "system of free public schools" quite as effectively and inevitably as it would remove the age limit in the case of a high-school student. That it was never the intention of the law either to make the "higher institutions of learning" referred to in the paragraph just quoted more generally accessible without cost to all applicants for admission than the lower grades of "the regular common-school system," or to confer upon any and all persons, regardless of age or of mental and moral qualifications, or notwithstanding refusal to comply with the express statutory provisions as to acquisition of the necessary textbooks and supplies, or in the face of obviously possible circumstances and conditions,—the actual existence of some of which, such as the overcrowded condition and inadequate capacity of our schools in general and the lack of necessary funds to remedy the situation, is a matter of judicial knowledge,—an absolute unqualified right to immediate enrolment as of course and without room or opportunity for the exercise of any discretion whatsoever upon the part of the school authorities in any of such "higher institutions of learning," would seem to be too clear for argument. The proposition refutes itself and falls of its own weight in the bare statement thereof.

The language of the law of 1915 is too plain to admit of construction. It substantially follows and conforms to and constitutes a practical contemporary interpretation of section 2 of the Codified School Laws, *supra*. But even otherwise, and in so far as any real conflict may be said to exist, the later expression of the legislative will in such unmis-

takable terms must necessarily control; and, however absolute and unquestionable the right of a student over age under the former law to be provided with free textbooks and supplies in "all high and continuation schools" or to enrolment therein notwithstanding his failure to provide himself with the necessary school equipment, that right most assuredly did not survive the more recent enactment.

We need not now discuss the degree of discretion, if any at all there be, in the Commissioner of Education under the law now in force. In so far as the statute is mandatory at all it forbids what the petitioner seeks to compel the Commissioner of Education to do. In so far as it is directory or permissive of a possible exception, if it be open to such an interpretation, then the peculiar circumstances which might warrant the making of such an exception, even had they been alleged, would necessarily constitute matter which, however proper for consideration by the school authorities, could not in any event form the basis of *mandamus* proceedings in the total absence of any suggestion, however remote, of a "plain ministerial duty" in the premises.

The judgment of the court below must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice del Toro took no part in the decision of this case.